### AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Adam Terrizzi, being duly sworn, hereby depose and state as follows:

#### I. INTRODUCTION

1. I have been a Special Agent with the United States Secret Service ("USSS") since May 2021. My current duties include investigating all financial crimes and protecting the President, Vice President, and other dignitaries afforded protection by statute and federal law, as well as heads of state visiting the United States. I have been assigned to the Manchester Resident Office since 2021. I was formerly employed as a police officer and detective with the Manchester, New Hampshire Police Department from 2016 to 2021, where I served as a patrol officer for four years, and then one year as a detective investigating domestic violence offenses in the city. I graduated from Norwich University in 2007 with a B.S. degree in Business Administration and Management.

2. I have received extensive training in financial fraud investigations at the Federal Law Enforcement Training Center ("FLETC") and at the USSS' James J. Rowley Training Center. During my time as a federal agent, I have investigated numerous cases of economic crimes, including wire fraud, bank fraud, access device fraud, identity theft, counterfeit currency, and others. Currently assigned to the Manchester Resident Office, I conduct financial crime investigations, including violations of 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud). In these investigations, I have conducted or participated in interviews of suspects and witnesses, and researched bank account records and records of wire transfers between banks. Through my training and experience, I have become familiar with various financial schemes such as bank frauds, frauds involving Government programs, and other wire and mail frauds. Further, as a federal agent, I am authorized to execute warrants issued under the authority of the United States.

## II.     PURPOSE OF THE AFFIDAVIT

1. I offer this Affidavit in support of an application for a seizure warrant for $69,000.00 in funds on deposit at Pinnacle Bank account number 740012602526 ("Target Account"), registered in the names of Zankhanaben Patel (DOB: ███/1973) ("Patel") and Ketankumar Patel.  I believe there is probable cause to show that the $69,000.00 in the Target Account constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1341, and is subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(e),(f), by 18 U.S.C. § 982(b)(1), and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

2. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers, bank investigators, and witnesses.  This affidavit is intended to show there is sufficient probable cause for the requested warrant.  It does not purport to set forth everything I know about this investigation.

## III.     APPLICABLE STATUTES

3. Title 18 U.S.C. § 1341 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses… for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon…" shall be guilty of mail fraud.

4. The proceeds of mail fraud are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.[1]

---

[1] 18 U.S.C. § 981(a)(1)(C) subjects to forfeiture any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).  That statute incorporates the definition of "racketeering activity" set forth in 18 U.S.C. § 1961(1), which includes 18 U.S.C. § 1341 (mail fraud).

5.      Title 18 U.S.C. § 984 provides that fungible property such as cash, monetary instruments in bearer form, or funds in a financial institution, whether or not directly traceable to an offense, may be subject to forfeiture up to one year from the date of the offense. This section does not limit the ability of the United States to forfeit property that is directly traceable to the offense. 18 U.S.C. § 984(d).

6.      18 U.S.C. § 981(b), which authorizes the seizure of the property subject to forfeiture, requires a showing of probable cause, but does not require a showing that less restrictive means may not be sufficient to secure the funds.

7.      The criminal seizure warrant statute, 21 U.S.C. § 853(f), requires the court to determine that a restraining order, an injunction, or a temporary restraining order as provided by 21 U.S.C. § 853(e), may not be sufficient to assure the property for forfeiture.

8.      However, the Court is entitled to infer from the inherent fungibility and transferability of money in a bank account that a restraining order under section 853(e) would be inadequate. *United States v. Swenson*, No. 1:13-cr-00091-BLW, 2013 WL 3322632, at *5 (D. Idaho July 1, 2013); *United States v. Wiese*, No. 09-20414, 2012 WL 43369, at *2-3 (E.D. Mich. Jan. 9, 2012); *United States v. Martin*, 460 F.Supp.2d 669, 677 (D. Md. 2006), aff'd 662 F. 3d 301, 304 n.6 (4th Cir. 2011).

9.      Moreover, "[t]here is no requirement under § 853(f) in particular, or in any seizure warrant in general, and the court has located no case to the contrary, that the Judicial Officer issuing the seizure warrants is required explicitly to state that a restraint under § 853(e) may not have sufficiently assured the availability of funds." *Wiese*, 2012 WL 43369, at *2.

10.     When tracing tainted money through a series of bank accounts, the Government may use several reasonable methods –"e.g., that the first funds to be deposited into a bank account are the first to be withdrawn (the 'first in, first out' or FIFO rule); that the last funds to be deposited are the are the first to be withdrawn ('the last in, first out' or LIFO rule), or that the tainted funds that the Government is seeking to trace will always be the last to be withdrawn

3

from the account (the 'lowest intermediate balance' rule)." Stefan D. Cassella, Asset Forfeiture Law in the United States (3d ed. 2022), at 564-565.

## IV.     STATEMENT OF PROBABLE CAUSE

11. On November 23, 2022, the Concord Police Department received a call from an M&T Bank employee about one of its elderly customers, Norma Lyman (DOB: ▮▮/1942). Ms. Lyman had been withdrawing multiple large sums of money to send to an unknown third party. Lyman had withdrawn a large sum from one of her bank accounts, and told employees that she was purchasing a "compound" in California for her family and friends to use. She had not made any withdrawals from this account since the 1990s. The bank employee researched the address where Lyman thought she was buying real estate and found that it was a trailer park. The employee shared this information with Lyman, who became upset. The bank employee reported that Lyman seemed confused and appeared unaware that she was probably being scammed.

12. An Adult Protective Services Worker was assigned to investigate the matter, and Lyman told the worker that she was "sworn to secrecy," and could not talk about the person to whom she was sending large sums of money.

13. Officers from Concord Police Department spoke with M&T Bank employees and learned that on November 7, 2022, Lyman had withdrawn $70,000 from her account and purchased a bank check for the same amount, payable to Ronald Guzman. The bank confirmed that Guzman had deposited the check at Chase Bank. M&T Bank closed Lyman's account when she returned to withdraw another $20,000 in cash because it was apparent someone was exploiting Lyman.

14. On December 20, 2022, Concord detectives interviewed Lyman at her home. She told detectives that she had been nervous and afraid. She admitted mailing large amounts of money to unknown individuals to whom she had spoken on the phone.

15. While detectives were at Lyman's home, the telephone rang several times. After Lyman ended a call, the telephone would ring again. Lyman said that had been happening for

months.  Lyman said she knew she was being scammed but did not know what to do or how to handle it.  Lyman said that she would often just listen and comply with the demands of the people on the telephone because she was scared.  The detectives thought that Lyman had memory problems because she would become frustrated when trying to recall things.

16.     Lyman provided detectives with a copy of her checkbook.  Numerous entries of suspicious transactions had notations such as "Savings Services Inc. Scam-Scam-Scam," "Tech Promotion Inc," "D. Tech Spoil," "Tech Promotions STOP Scam!!," "Upgrade?? STOP," and "STOP Saving Services Inc."

17.     The next day, December 21, 2022, Concord officers called to check on Lyman, and when she answered the telephone, she was distraught and said she was afraid.  She had been contacted by more people by phone, had gone to the bank, and had money with her.  The officers went to her home and learned that she had withdrawn the remainder of her account balance from Merrimack County Savings Bank, in excess of $200,000.  According to Lyman, Merrimack County Savings Bank closed her account, just as M&T Bank had.  While speaking with Lyman, the officers saw several copies of TD Bank checks on Lyman's couch.  Based on the receipts, it appeared that Lyman had made several large cash withdrawals and had written large checks to others.

18.     Lyman accompanied the officers to TD Bank to meet the bank manager, who provided the officers with several checks from Lyman's account addressed to various people and businesses.  One check for $90,000, dated November 16, 2022, was addressed to "Mr. Ronald Guzman."  The back of the check appeared to be endorsed by "Ronald Guzman."

19.     Concord detectives obtained a state search warrant for bank records for Ronald Guzman's Chase Bank account.  Bank records show that Ronald Manuel Guzman is the only account holder on the account and his address is in Whittier, California.  The only apparent source of income for the account is a monthly Social Security deposit of $1,112.

20.     On January 31, 2023, I spoke to Guzman.  He told me that he does not know Lyman and does not do business with anyone from New Hampshire.  Guzman believed that

Lyman's checks came from a friend of a business associate. Guzman has never met the business associate, a "Mr. Scott," in person. According to Guzman, "Scott" has an Indian or Pakistani accent. Guzman said he thought the checks were for the purchase of restaurant equipment.

21. The records show that on November 8, 2022, Guzman deposited a $70,000 bank check from Lyman's M&T Bank into his Chase account via Edeposit.

22. On November 15, 2022, Guzman withdrew $69,000 of the victim's money from his Chase account and obtained a cashier's check for the same amount, payable to Z. K. Patel.

23. That day, the cashier's check was Edeposited into a Wells Fargo account number ▬1298, owned by Z. K. (Zankhanaben) Patel ("account 1298"). The balance for that account prior to the deposit was $200,870.69. The deposit brought the account balance to $269,870.69.

24. Later deposits into account 1298 in November and December 2022 brought the balance to $302,088.43. Account 1298 had no debits between November 15, 2022 and January 6, 2023.

25. On January 6, 2023, Patel withdrew most of the money from account 1298, transferring $300,000 to a Wells Fargo account number ▬6603 ("account 6603"), also in Patel's name. Applying a "last money in, first money out" accounting method - that is, funds are debited in the order of the most recent deposits - this transfer included the victim's $69,000. The balance in account 6603 prior to that transfer was $34,019.68. The transfer brought the account balance to $334,019.68. Additional deposits that day, for $35,000 and $30,000, brought the account balance to $399,019.68. That day, the account also had three debits totaling $18,000 (See the diagram below). The final balance for account 6603 on January 6, 2023 was $381,029.68.

26. Assuming, again, the "last money in, first money out" method, Debits 1, 2, and 3 are deducted from Deposit C.

27. On January 6, 2023, Patel also wrote check 1007 from account 6603 for $275,000. Using, again, a "last money in, first money out" accounting method, check 1007

included $12,000 remaining from deposit C, $35,000 from deposit B, and $228,000 from deposit A, which included the victim's money.

| Account 6603 - January 6, 2023 | |
|---|---|
| Starting balance (dollars): | 34,019.68 |
| Deposit A: | 300,000.00 (includes victims $69,000). |
| Deposit B: | 35,000.00 |
| Deposit C: | 30,000.00 |
| Debit 1 | (1.00) |
| Debit 2 | (2,999.00) |
| Debit 3 | (15,000) |
| Debit 4 (ck 1007) | (275,000) |
| Ending balance: | 381,029.68 |

28.  Patel used check 1007 to purchase a CD for $275,000 that was deposited into the target account, Pinnacle Bank account number 740012602526. The target account therefore includes $69,000 of the victim's money.

29.  The victim's money is also traceable to the target account using the "Lowest Intermediate Balance" rule, because the lowest intermediate balance in each account never fell below $69,000 as the illegal funds traversed one account to another. *See United States v. $56,471,329.88 in Proceeds From the Sale of a Bond*, 466 F. Supp. 3d 63 (D.D.C. 2020) (tracing $56.4 million through a succession of bank accounts).[2]

---

[2] The Plaintiff established that through the illegal sale of C-295s, Airbus received various payments to exceed 50,000,000 Euros. These payments were made to an Airbus D&S Spain EUR bank account, which was then swept into an Airbus SE EUR pooling account. The Airbus SE EUR pooling account was then used for the redistribution of funds to all relevant Airbus entities. Those funds not required by other Airbus entities were then transferred into an Airbus SE EUR Master Pooling Account. From the Airbus SE EUR Master Pooling Account, excess cash was invested into the Investment Account. The Investment Account was where a bond worth 50,000,000 Euros (the source of Defendant Property) was located. As acknowledged by Airbus SE, the lowest intermediate balance in each of these accounts, as the illicit proceeds traversed one account to another, never fell below 50,000,000 Euros, through the date Airbus SE purchased the bond in question. On or about February 10, 2020, Airbus liquidated this bond, and converted the proceeds of such sale from Euros into U.S. Dollars, which represents the Defendant Property. 466 F. Supp. 3d at 66.

30.     I believe that Z. K. Patel is receiving funds via a "mule account" controlled by Guzman. "Mule accounts" are bank accounts used to move illegally obtained funds from one bank account to another and also to obscure the true source of the funds.

31.     A restraining order under 21 U.S.C. § 853(e) will not be sufficient to preserve funds in the target account, given the ease with which funds may move out of accounts via wire transfer, electronic funds transfer, or otherwise. Through the series of transactions described above, the target account received funds that were traced from our victim, through a money mule (Guzman), who quickly sent all but his $1000 fee to a third party (Patel). Once Patel received the funds, she immediately transferred the funds into several more accounts that she owned. Other agents have told me that financial institutions cannot guarantee that money restrained, but not seized, will be available for forfeiture at a later time.

### V.     CONCLUSION

32.     There is probable cause to believe that $69,000.00 in funds on deposit in Target Account, Pinnacle Bank account number 740012602526 in the name of Zankhanaben Patel and Ketankumar Patel, are the proceeds of a specified unlawful activity, mail fraud, in violation of 18, U.S.C. § 1341, and are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. I request that the Court grant this seizure warrant to allow the United States Secret Service to seize $69,000 from the $275,000 CD held in the target account, which may require Pinnacle Bank to "call" or "cash out" the CD.

/s/ Adam Terrizzi
Adam Terrizzi, Special Agent
United States Secret Service

Subscribed to and sworn before me
on February    24   , 2023

/s/ Andrea K. Johnstone
Honorable Andrea K. Johnstone
United States Magistrate Judge